**AMERICAN BRAKE SHOE & FOUNDRY COMPANY, Plaintiff,**

v.

**INTERBOROUGH RAPID TRANSIT COMPANY and Manhattan Railway Company, Bankers Trust Company as Trustee Under The Collateral Indenture Dated September 1, 1922, Defendants.**

**APPLICATION OF UNITED STATES of America FOR the PAYMENT of Moneys BY The GUARANTY TRUST COMPANY OF NEW YORK as Agent FOR Addison S. PRATT, Special Master.**

United States District Court
S. D. New York.
July 31, 1958.

---

Arthur H. Christy, U. S. Atty., New York City, S. D., New York, William Stackpole, Asst. U. S. Atty., New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen. of the State of New York for intervenor, Angelo J. Arculeo, Asst. Atty. Gen., of counsel.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Guaranty Trust Co. L. L. Stanton, Jr., New York City, of counsel.

LEVET, District Judge.

This is an application made by the United States of America to direct The Guaranty Trust Company of New York (hereinafter called "Guaranty") to pay certain funds now held by it as agent for Addison S. Pratt, Special Master, in the above-entitled proceeding (originally brought by The American Brake Shoe & Foundry Company) to the United States Treasury in the name and to the credit of the United States pursuant to Sections 2041 and 2042 of Title 28 U.S. C.A.

Guaranty does not oppose this application. The Attorney General of the State of New York seeks to intervene herein on behalf of the State, claiming that these funds should be turned over to the State under the New York Abandoned Property Law, § 300, subd. 1(a) (v).

Title 28 U.S.C.A. §§ 2041 and 2042 are as follows:

"§ 2041. Deposit

"All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

"This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court."

"§ 2042. Withdrawal

"No money deposited shall be withdrawn except by order of court.

"In every case in which the right to withdraw money deposited in court has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him."

The background as to the facts here involved is set forth by William Stackpole, Assistant United States Attorney, in his affidavit sworn to August 22, 1957. The State does not differ as to facts, but, rather, as to conclusions therefrom. These facts are substantially as follows:

(1) By an order of this court constituting a final decree of foreclosure and sale of a mortgage indenture held by The American Brake Shoe & Foundry Company, dated February 5, 1940, Addison S. Pratt, Special Master, was directed to sell property of the Interborough Rapid Transit Company (hereinafter called "Interborough") at public auction and to deposit all proceeds received by him with Guaranty, to be held subject to the order of this court. On March 11, 1940 the sale was made to the City of New York.

(2) On March 13, 1941, funds in the aggregate amount of $356,692.62 were deposited with Guaranty, to be held by

it for distribution to the holders of the Interborough 5% bonds, 7% notes and 6% notes.

(3) The sources of the funds comprising this aggregate are set forth in an order dated March 1, 1941, made by District Judge Hulbert of this court, and are tabulated as follows:

1. Proceeds of the sale of lot 1, described in an earlier decree, paid by New York City to Guaranty "as agent of the Special Master" (see paragraph 2 of order).. $190,372.81

2. Proceeds of the sale of lot 2, which had not been covered by the mortgage, paid by New York City to Guaranty "as agent of the Special Master" (see paragraph 7 of order).. 48,931.20

3. Cash held by Guaranty as trustee under the First and Refunding Mortgage of Interborough (see paragraph 2 of order)............. 117,388.61

Total........ $356,692.62

(4) Thus, of the aggregate of $356,-692.62, only $239,304.01 was received by Guaranty "as agent of the Special Master." Nevertheless, Judge Hulbert specifically provided for the merger of these funds from both sources into one aggregate fund, which was then to be applied to the three mentioned classes of Interborough securities (see paragraph 9 of order), and from this aggregate, treated as a single fund, Guaranty was directed to make cash payments of respective distributive shares to these holders.

(5) Since the deposit of these funds with Guaranty in 1941, the bank has proceeded to make distribution to the holders of the Interborough 5% gold bonds, due January 1, 1966, of the said company's 7% notes, due September 1, 1932, and of the company's 6% notes, due October 1, 1952.

(6) By reason of these distributions the balances applicable to each class of securities had diminished as of September 5, 1957 to the following figures:

5% bonds..................$ 9,356.12
7% notes.................. 13,461.06
6% notes................. 1,063.57

Total ................$23,880.75

Guaranty reports that certain payments have been made since September 5, 1957 so that the balance is now less than $23,880.75.

The sections of the New York Abandoned Property Law which are pertinent are Section 300 and Section 1200 et seq.

Under Section 2041 of Title 28 U.S. C.A. it is provided that this section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of the parties under the direction of the court. It appears now that this court took jurisdiction of the assets of Interborough, including the funds then in existence and held by Guaranty, and that the funds held by Guaranty were court funds. As above stated, it further appears from a reading of the distribution decree of March 1, 1951, that the court intended the cash held by Guaranty and the surplus proceeds of the sale to be distributed as one fund. This was the construction which Guaranty applied to the transaction since it combined the cash held by it, $117,338.61, and the sale proceeds, $239,304.01, opened new accounts and went on with the distribution without differentiation between the sources.

Consequently, Sections 2041 and 2042 of Title 28 U.S.C.A. are applicable.

The money has remained under deposit for at least five years, unclaimed by the persons entitled thereto. Moreover, Section 2042 provides further that any claimant entitled to any such money may, on petition to the court and upon notice to the United States Attorney and full proof of the right thereto, obtain an order directing payment to him.

There is no doubt that at least the sale proceeds in the amount of $239,304.-

01 received by the Special Master and deposited with Guaranty as agent of the Special Master were in effect received by an officer of this court. As to the cash received by Guaranty as trustee, $117,-388.61, it appears from the proceedings heretofore taken in reference thereto that the bank was directed to hold and distribute both the funds in its hands and the money turned over to it in accordance with the directions of the court and as agent of the Special Master.

Certainly, the State has not shown that it is affirmatively entitled to receive any particular portion of the balance now remaining in Guaranty. Guaranty did not allocate the distribution from this combined fund in any way.

 It is my opinion, furthermore, that the State is not peremptorily entitled to the funds under the provisions of the Abandoned Property Law, above referred to. (1) The funds, contrary to subsection 1(a) of Section 300 have been reduced within 15 years; (2) Subsection 1(a) (v) excepts from the effect of Section 300 all amounts held by a bank as agent for making payments to holders of bonds of a corporation provided that the corporation has not gone out of business "without the right to receive such amount having passed to a successor or successors." Interborough is out of business as a result of reorganization, but the right to receive the funds now held by Guaranty did not pass to a successor or successors. (3) Moreover, Section 1202 et seq. of the New York Abandoned Property Law provides for escheat proceedings. Such a proceeding would appear to be the method by which the State must establish its right to the fund here in question.

This court, in my opinion, has no jurisdiction under these circumstances to make such a determination as is now sought by the State. See In re Vulcan & Reiter Co., Inc., D.C.S.D.N.Y.1948, 80 F. Supp. 286, 289. As already indicated, the transfer of the funds to the United States Treasury will not necessarily settle ultimate title to them. Section 2042 of Title 28 U.S.C.A. The United States will hold these funds in effect as a statutory trustee for the rightful owners. The State, if it is entitled to the funds, as above stated may seek to establish escheat.

Accordingly, the motion of the United States of America is granted; the motion to intervene is granted; but the motion to turn over the funds to the State is denied.

The order to be made herein should provide for turning over the balance now remaining of the $23,880.75 on deposit as of September 5, 1957, after proof by Guaranty of payments since September 5, 1957, to be supplied upon settlement of order, and that Guaranty's compliance with such order shall fully discharge it of all liability with respect to these funds.

Settle order on notice to the attorneys for Guaranty and to the Attorney General.